# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JIM A. BRITO,

    **Plaintiff,**

v.                                                           CV 98-1070 JP/KBM

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's (Brito's) Motion to Reverse or Remand Administrative Decision, filed March 19, 1999. The Commissioner of Social Security issued a final decision denying Brito's application for disability insurance benefits. Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, I find that the motion is well taken in part and recommend that it be granted in part.

### A. Facts/Procedural Background

Brito, now 60, has a high school education. He has worked as a machinist, machine shop supervisor and composite material technician in the aircraft and jet engine industries. Brito also has vocational training in market refrigeration. He filed his application for disability insurance benefits May 10, 1995. [MIS 1] Brito alleged disability commencing June 1, 1979, due to a back impairment and diabetes. At the administrative hearing, however, he changed his alleged disability onset date to March 1995 [AR 179], the time when he ceased working due to the alleged impairments, and which was subsequent to a period of incarceration from November 1993 to

March 1995. [MIS 7]

The Commissioner denied Brito's application for disability insurance benefits. After conducting the hearing, the Commissioner's Administrative Law Judge (ALJ) found Brito not disabled. [AR 29] Acknowledging that Brito had had spine surgeries, disc disease, and related pain and discomfort, the ALJ found that Brito was able to care for himself and perform routine daily activities. The ALJ also found that Brito should be able to perform light work based on his age, education and physical capability. [AR 29] The Appeals Council denied Brito's request for review of the ALJ's decision. [AR 3] The ALJ's decision thus became the Commissioner's final decision for purposes of review. Brito now seeks this Court's review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### B. Standard of Review and Applicable Law

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

To qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) citing 42 U.S.C. § 423(d)(1)(A). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific

sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if at any step the Commissioner finds that the claimant is or is not disabled. *Thompson*, 987 F.2d at 1486.

At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1420 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id*.

### C. Discussion

In support of his Motion to Reverse and Remand, Brito argues that the ALJ erred on six points: (1) the decision is not based on the medical evidence in the record; (2) the objective medical evidence of his back impairment establishes his disability; (3) the ALJ erred in making a credibility assessment because objective medical evidence substantiated his allegations of symptoms and functional limitations; (4) the ALJ's assessment of his credibility is legally erroneous and unsupported by substantial evidence; (5) the ALJ's assessment of his residual functional capacity is legally erroneous and unsupported by substantial evidence; and, (6) the ALJ's determination that Brito can return to past relevant work as a machinist supervisor is legally erroneous and unsupported by substantial evidence.

The Court consolidates Brito's claims of error into three issues: (1) whether substantial

3

evidence supports the ALJ's findings that Brito's pain was not disabling, considering the ALJ's assessment of Brito's credibility; (2) whether the ALJ properly determined that Brito could return to his past relevant work at step four; and (3) whether the ALJ properly found that Brito was not disabled due to diabetes. I recommend that the motion be denied as to the first and third issues, but that the second issue be remanded for further consideration.

1. <u>*Substantial evidence supports the ALJ's finding that Brito's pain was not disabling considering the ALJ's assessment of Brito's credibility*</u>

Brito claims that the ALJ erred at step four of the sequential disability analysis, in finding that Brito could perform sedentary work, could return to his past relevant work as a machinist supervisor, and was thus not disabled. [MIS 16, 23] At step four, the claimant must show that the impairment prevents him from performing work he has performed in the past. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

In deciding as he did, the ALJ stated that the record showed Brito indeed had a "severe" impairment or combination of impairments. [AR 9, ¶ 4] The ALJ found, however, that Brito's impairments, singly or in combination, did not meet or equal in severity any set forth in the Listing of Impairments. [AR 9, ¶ 6] The ALJ also heard testimony from a vocational expert, who testified that Brito had the physical capacity to return to his past work as a machinist and machinist supervisor. The vocational expert testified that although machinist is a typically medium job, Brito had described his position as light work, not requiring lifting of more than 20 pounds. [AR 214]

Moreover, the ALJ concluded that while Brito had a pain producing impairment, Brito exaggerated the degree of pain he experienced. [AR 9, ¶ 7] The ALJ based this conclusion on Brito's testimony that he sometimes took Ibuprofen for the pain; that he can sit for 15 to 20

4

minutes and stand long enough to do dishes if he takes a break; that he can do some housework; and, that he uses a treadmill for 10 minutes a day. [AR 9, ¶ 7] Stated another way, Brito's description of the degree of his pain did not match what he did to treat the pain, and it did not comport with other daily activities he was able to engage in.

"When determining the credibility of pain testimony, the ALJ should consider such factors as 'the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence.'" *Thompson*, 987 F.2d at 1489 (citations omitted). Also, once an underlying impairment could reasonably be expected to produce the individual's pain, "the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms limit the individual's ability to do basic work activities." S.S.R. 96-7p; s*ee also* 20 C.F.R. § 404.1529(c)(4).

It is important to note that Brito cites to nothing in the record, save his own testimony, that directly characterizes his pain as disabling. Brito's testimony, however, is equivocal on this question. For example, Brito testified as to limitations concerning his ability to lift nothing heavier than a gallon of milk, to difficulty in putting on shoes and socks, and to not being able to stand for about as long as it took to walk a half of a mile. Yet he also testified that he only took Ibuprofen for his pain when he occasionally needed it, and that the Ibuprofen helped and made him comfortable. [AR 188-90, 200] He testified that he could do housework, vacuuming, walking ten minutes a day on the treadmill, and driving. These matters are directly related to the "intensity, persistence, and limiting effects" of the pain related to S.S.R. 96-7p. *See also* 20 C.F.R. §

5

404.1529(c)(4). It is clear from the record that the ALJ considered these factors as they concern Brito's credibility. [AR 10, ¶ 7]

Furthermore, Brito conceded that his felony conviction prevented him from getting a secret security clearance, which was necessary for employment with an aircraft manufacturer with whom he had applied. [AR 223] Concerning the reason he was laid off from General Electric, the record is also equivocal. Brito alleged at one point that the layoff resulted because his physical restrictions kept him from doing work his former work. [AR 70] Yet he also testified that the layoff resulted from his employer losing a contract on which he was working. [185] The ALJ could also have found these inconsistencies to have detracted from Brito's credibility. *See* 20 C.F.R. § 404.1529(c)(4).

Thus, Brito's own testimony undercut his claim of disabling pain. This Court must review the record as a whole, and "the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Kemp v. Bowen*, 816 F.2d 1469, 1475 (10th Cir. 1987) (citations omitted). Brito's testimony, about his daily activities combined with his treatment of the pain, is itself evidence that detracted from the weight of his testimony concerning how his alleged impairments affected his ability to work. And while an "ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain," *Frey v. Bowen*, 816 F.2d 508, 516 (10th Cir. 1987), the Court is aware of no case that commands an ALJ utterly to disregard all such evidence. On the contrary, when determining credibility of pain testimony, the ALJ should consider factors such as "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief . . . , the nature of daily activities, [and] subjective measures of credibility that are peculiarly within the judgment of the ALJ . . . ." *Thompson*, 987

6

F.2d at 1489 (citations omitted).

An ALJ must make a finding of credibility on the record when the claimant's statements about the pain are not substantiated by objective medical evidence. SSR 96-7p. From this simple statement, Brito leaps to the proposition that the ALJ is precluded from assessing the claimant's credibility if the medical evidence could support a finding of disabling pain. It is true that the ALJ cannot ignore objective evidence that favors the plaintiff simply because he finds the plaintiff not credible. *Henrie v. U.S. Dept. of Health & Hum. Serv.*, 13 F.3d 359, 361 (10th Cir. 1993). Where the objective evidence does not inexorably lead to a conclusion that the claimant is disabled, statements of the claimant and his credibility necessarily play a role in the ALJ's decision-making.

As stated above, the record contained evidence of a possibly severe impairment. But only Brito's testimony directly characterized his pain or his impairment as disabling. For example, Brito's medical examination by Dr. Jan Hamilton [AR 69-76] showed impairment at some level, particularly regarding lifting, sitting, standing and walking. [AR 72-73] Yet Brito also retained the ability to lift ten pounds above the waste for up to one-third of an eight hour day, and to lift 5 pounds for up to two-thirds of an eight hour day. [AR 72] For the foregoing reasons the ALJ could reasonably have concluded that Brito's pain was not disabling. Substantial evidence, in the form of medical evidence, the vocational expert's testimony and Brito's equivocal testimony, supports that conclusion. It also supports the ALJ's assessment of Brito's credibility.

2. *The ALJ improperly determined that Brito could return to his previous work*

At step four, the ALJ concluded that Brito had a residual functional capacity for at least sedentary work, and that he could return to his past relevant work as a machinist supervisor. [AR 11, ¶¶ 8, 9] Nevertheless, there was uncontroverted evidence that Brito could not meet the specific

demands of sitting, walking, and standing that were required of this job. Specifically, Brito claimed that his job as a machinist supervisor required him to walk four hours, stand one hour, and sit five hours. [AR 44] Yet Brito claimed he could only sit for one hour at a time; walk up to a half mile on a good day; and, that his ability to stand was about the same as his ability to walk. [AR 70-73]

"Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Nothing in the record, nor in the ALJ's decision, clearly addresses whether Brito's ability to sit, walk, and stand was sufficient to the task of a machinist or machinist supervisor, even at a sedentary level. Nothing in the vocational expert's hypothetical addressed this point either. [AR 213] Even assuming that Brito's former job as a machinist supervisor involved light to sedentary work (The Dictionary of Occupational Titles (4th ed. 1991), § 600.130.010, lists a machinist supervisor as medium work), it is not clear from the record that Brito could or could not do this job based on these alleged limitations. For example, it is not clear whether Brito would be required to remain seated for four hours straight at work, without allowances for breaks or the opportunity to change his position, or whether he could freely move and change positions to accommodate his alleged impairments.

Furthermore, the ALJ made no specific finding regarding Brito's credibility on this point. The ALJ simply found that Brito exaggerated his pain, and that Brito's testimony about "functional limitations, including pain, was not supported by the evidence as a whole . . . ." [AR 10, ¶ 7] As such, the ALJ appears to have made findings regarding Brito's non-exertional impairments by

8

including pain, a non-exertional impairment, 20 C.F.R. § 1569(b), in the subject of "functional limitations." It is thus also unclear whether the ALJ made specific findings, either regarding credibility or substantiality of the evidence, as to Brito's allegations of <u>exertional</u> impairments in sitting, walking, and standing. *See* 20 C.F.R. § 1569(a) (demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered non-exertional). Because it is difficult to be certain as to the ALJ's decision on these questions, I recommend that the matter be remanded for the ALJ to consider whether Brito's impairments, especially limitations on his ability to sit, walk, and stand, prevented him from doing his former work. If Brito cannot do his former work, the ALJ will proceed to step five. Of course, the ALJ may find it necessary to look into Brito's credibility on this question.

   3.   *The ALJ properly denied Brito's claim for disability due to diabetes*

Brito has refused treatment for his diabetes because he did not "like the injections." [AR 217-18] His diabetes was otherwise properly controlled when he used his medicine properly. [AR 190-95, 216-20] "If you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . ." 20 C.F.R. § 1530(b). The dislike of injections is not like those good reasons the Social Security Administration accepts for refusing treatment. *See* 20 C.F.R. § 1530(c)(1-5). There was substantial evidence to support the decision denying disability benefits for diabetes, and the Commissioner properly denied Brito's claim.

### D. CONCLUSION / RECOMMENDED DISPOSITION

I recommend granting in part Plaintiff's Motion to Reverse or Remand Administrative Agency decision. I recommend remanding the matter to the Commissioner for further consideration of Plaintiff's allegations of limitations regarding his ability to sit, walk, and stand in

connection with the question whether Plaintiff could return to his former work under step four of the sequential evaluation. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1).

_____
Karen Ballard Molzen
UNITED STATES MAGISTRATE JUDGE

Counsel for Plaintiff:        Patricia Glazek, Esq.
                              PATRICIA GLAZEK, Attorney at Law
                              18 Chapala Road
                              Santa Fe, NM  87502


Counsel for Defendant:        Joan Marie Hart, Esq.
                              UNITED STATES ATTORNEY'S OFFICE
                              P.O. Box 607
                              Albuquerque, NM 87103

                              Katauna J. King, Esq.
                              OFFICE OF THE GENERAL COUNSEL,
                                SOCIAL SECURITY ADMINISTRATION
                              1301 Young Street, Suite 430
                              Dallas, TX 75202